United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA JANETH GONZALEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SANTA CLARA COUNTY, et al., <br><br> Defendants. | Case No. 24-cv-00296-PCP <br><br> **ORDER GRANTING MOTIONS TO DISMISS** <br><br> Re: Dkt. Nos. 50, 51 |

Plaintiff Laura Janeth Gonzalez brings this civil rights action individually and as a successor in interest of her decedent son Ayden Gonzalez, together with her minor son plaintiff Ethan Noe Rivera. This action arises out of Ayden's tragic and untimely death at age nine, when he drowned in the swimming pool of a Mountain View apartment complex on July 6, 2022. The plaintiffs bring several causes of action under 42 U.S.C.§ 1983, 42 U.S.C. § 1985, and California state law against defendants the County of Santa Clara, Lisa Flores, Farhad Amirebrahimi (referred to by plaintiffs as "Fred Amir"), the City of Mountain View, the Mountain View Police Department, Pablo Donato, the Mountain View Fire Department, Matthew Gundersen, and several Doe defendants.

For the reasons discussed herein, the Court granted two Rule 12(b)(6) motions to dismiss, the first a partial motion to dismiss brought by the City of Mountain View and the Mountain View Police Department, Dkt. No. 50, and the second a motion to dismiss all claims against the County of Santa Clara and its employees Lisa Flores, Farhad Amirebrahimi, and other Doe defendants (collectively the "County Defendants"), Dkt. No. 51. *See* Dkt. No. 70.

**I.    Factual Background**

    **A.    Ayden's death**

    Ms. Gonzalez is the mother of Ayden Gonzalez, a nine-year old child with developmental disabilities who tragically drowned at an apartment complex in Mountain View in 2022.[1] Ethan is Ayden's younger brother who, at six-years old, witnessed Ayden's death. Ms. Gonzalez and Ethan are residents of Santa Clara County.

    On July 6, 2022, Ayden and Ethan clambered over a low-lying fence and ventured into a swimming pool at an apartment complex located at 1895 Ednamary Way in Mountain View, California. Ayden "stepped onto a small, 3-inch-high brick planter located immediately next to a small, roughly 3-foot, 11-inch–high chain-link fence that separated the pool from the surrounding walkways." According to plaintiffs, the design of the chain-link fence and placement of the slide facilitated Ayden's entry into the pool. Ayden lost his balance while reaching for a device and fell into the deep end of the pool. Ethan tried to help his older brother by reaching for a floating safety ring, but his efforts were thwarted because the ring was "enclosed in an outdated glass and metal case, which had been painted over and was not only located six feet off the ground" but also "obstructed by the pool fence."

    Ethan ultimately sought assistance from nearby painters, who pulled Ayden's body out of the pool, began administering CPR, and called 911. Officers from the Mountain View Police Department arrived on the scene and continued CPR until the ambulance arrived. Ayden was pronounced dead at 5:00pm the day of his drowning.

    **B.    Municipal Defendants' Customs, Policies, and Practices**

    1. *Mountain View Defendants*: The plaintiffs allege that the City of Mountain View failed to undertake due diligence to ascertain the safety of swimming pools under its jurisdiction, including the pool where Ayden drowned. According to the first amended complaint, the City of Mountain View "had ordinances, policies or customs of allowing property owners to have 'legal

---

[1] For the purposes of defendants' Rule 12(b)(6) motions, the Court accepted as true the allegations in the First Amended Complaint.

1  non-conforming use' also known as 'Grandfathered in' properties or structures, whether these
2  structures had become hazardous or posed serious safety concerns." Incentivized by fees charged
3  for "legal non-conforming use," the City purportedly allowed property owners to seek permits to
4  maintain properties and structures that posed safety risks, including pool enclosures at apartment
5  complexes.
6        The plaintiffs allege that the Mountain View Fire Department was primarily responsible
7  for inspecting multi-family homes for compliance with public health and welfare regulations.
8  Defendant Tom Schmidt was also responsible for inspecting or overseeing inspections performed
9  by code enforcement officers and the Mountain View Fire Department.
10       The plaintiffs allege that a City ordinance allowed inspections of multi-unit apartments
11 every five years, while exempting certain complexes without serious violations to be inspected
12 only every eight years and to "self-certify" every two-years during the interim period. They allege
13 further that California regulations and Mountain View ordinances generally require that pool
14 enclosures be surrounded by fences at least 5 feet tall. Despite that, Mountain View "listed pool
15 fence/enclosures that did not prevent access of the pool by children that were not 60 inches in
16 height made of metal bars as 'not serious violations' for purposes of their Multi Family Housing
17 Program action item check-lists."
18       According to plaintiffs, the 3-foot, 11-inch chain-link fence that enclosed the swimming
19 pool at 1895 Ednamary Way fell under the purview of "grandfathered-in legal non-conforming
20 structures." The Mountain View Fire Department and Schmidt had inspected the swimming pool
21 gate and fence at least seven times since 2002. In December 2013, the Fire Department and
22 "Environmental Health from City of Mountain View" reported that the pool's gate and fence were
23 out of compliance and required a permit. In February 2014, Schmidt sent a Certificate of Code
24 Compliance to the property informing it that it had achieved substantial compliance without
25 mentioning the pool enclosure, thereby exempting the property from inspection for eight years and
26 allowing the property to self-certify every two years during the interim. Except for the installation
27 of a new pool pump and "other cosmetic repairs," the plaintiffs allege that "[n]o changes,
28 additions, or modifications large or small [were] made to the subject pool fence or pool area in

3

1  general were made" between February 2014 and the date of Ayden's death.

2      2. *Santa Clara County Defendants*: Plaintiffs allege that prior to Ayden's death the County of Santa Clara also had ordinances, policies, and customs allowing property owners to maintain legal non-conforming properties and structures, even where those structures had become hazardous. Plaintiffs allege that the County had a financial incentive to allow these structures because the County, through its Department of Environmental Health, could and did require property owners to obtain permits for a fee for ongoing use. According to plaintiffs, the County was aware of the risks these structures posed. For example, in 2018, plaintiffs allege that County officials issued a public warning to residents about the risks posed after eight children were hospitalized and three children drowned. The County Board of Supervisors subsequently adopted updated swimming pool ordinances.

    Plaintiffs allege that prior to Ayden's drowning, the County hired defendant Lisa Flores as the Senior Environmental Health Specialist responsible for identifying health and safety code violations. Staff under Flores's supervision visited the pool at Ednamary Way "at least twenty times," "noted that the subject pool was in deteriorated condition," "noted several safety violations that included a pool enclosure that was not in compliance with" California public pool laws and local ordinances and regulations, and even closed the pool on at least two occasions prior to Ayden's death. Nonetheless, plaintiffs allege that the County "refused to do anything about the danger until the property owner decided they wanted to correct the issue or perform an update" because of the County's financial incentive to allow for non-conforming structures. Plaintiffs allege that Amirebrahimi, a supervisor in the County's Department of Environmental Health, inspected the Ednamary Way pool after Mountain View police contacted him in August 2022. According to plaintiffs, Amirebrahimi "stated that the pool area was in compliance and a 4-foot pool fence was up to code for an old fence."

### C.     The Alleged Conspiracy

Gonzalez and Ayden's father, nominal defendant Rivera, were separated and sharing custody of Ayden prior to his death. Approximately one month before Ayden's death, defendant Mountain View Police Officer Pablo Donato conducted a welfare check on Ayden at Rivera's

home upon Gonzalez's request. Donato allegedly reported no concerns and advised Gonzalez to go through family court if she had further concerns. He thereafter became the lead officer investigating Ayden's death.

The plaintiffs contend that certain defendants thereafter engaged in a conspiracy against plaintiffs. For instance, they claim that the Mountain View Police Department posted on Facebook that Rivera along with a female family member had been arrested for Ayden's drowning, and that the post became a "bashing and defamatory platform session" incriminating both Gonzalez and Rivera. Moreover, the plaintiffs allege that the Mountain View Police Department and City of Mountain View engaged in a conspiracy to undermine and thwart her prior litigation against the City of Mountain View. At one point, for instance, the plaintiffs allege that a police officer and Doe defendant intimidated Gonzalez when she attempted to rectify a "complete fabrication" in the police report filed by Donato. The officer was so "successful in his attempt to frighten and intimidate" Gonzalez, the complaint alleges, that she subsequently "refused to even attempt to file a civil complaint for the wrongful death of Ayden against the City of Mountain View, due to fear of her or her family becoming victims of violence, at the hands of the Mountain View Police officers."

The plaintiffs allege that the Mountain View Police Department pursued a systematic pattern of harassment and intimidation against her and her family as retaliation for the civil suit filed by her counsel. For instance, they allege that Donato and another police office both drove their police cars crossing directly in front of Gonzalez as she was preparing to cross the street, "absolutely terrifying [her] ... and prompting present counsel to send a Cease and Desist Letter to the Mountain View Police Department attorneys and the city of Mountain View." Moreover, a Doe defendant affiliated with the Mountain View Police Department allegedly contacted Ethan's elementary school about his safety and welfare, prompting schoolteachers and administrators to reach out to Gonzalez "for completely trivial matters." The plaintiffs also allege that two Mountain View police officers harassed her partner, Angel Aguilar, on largely spurious grounds as he was leaving a local Starbucks coffee shop in Mountain View.

Plaintiffs further allege that Mountain View police officers threatened a member of

Gonzalez's counsel's law firm, Hector Esquivel, who had served a subpoena request for discovery to the Mountain View police department. Soon thereafter, Esquivel received an "extremely upsetting" phone call from "[a] man talking in a very heavy fake Spanish accent" whom he suspected was a member of the Mountain View police department. Esquivel thereafter reached out directly to the Mountain View police department to address his grievances and "did not receive a phone call from this person again."

## II.   Procedural Background

1. *State Court Litigation*: On September 2, 2022, the plaintiffs filed a claim with the City of Mountain View consistent with the California Government Claims Act. The City rejected the claim on October 11, 2022, which was within the 45-day statutory window for doing so.

On June 12, 2023, the plaintiffs and Mr. Rivera commenced an action in Santa Clara County Superior Court against the County of Santa Clara, its Department of Environmental Health, and its Department of Planning and Development, asserting causes of action for negligence, negligence per se, and wrongful death. On September 8, 2023, the plaintiffs in the state court action filed a declaration of prejudice pursuant to California Code of Civil Procedure § 170.6.[2] On September 19, 2023, the court struck plaintiffs' declaration of prejudice, concluding that it was premature because there was at that time no trial or hearing on a contested issue of law or fact scheduled before the assigned judge.

On December 8, 2023, the County filed a demurrer to the state court plaintiffs' complaint and the demurrer was set for hearing before the assigned judge on January 23, 2024. On December 26, 2023, the state court plaintiffs submitted another declaration of prejudice pursuant to § 170.6.[3] The court again struck the declaration of prejudice and refused to recuse, concluding that the declaration was premature because no trial or hearing was scheduled. The court stated in its order

---

[2] Section 170.6 gives litigants in California state court the right to require recusal of the judge assigned to their case under certain specified circumstances. Parties can generally exercise that right only once and must do so in accordance with the applicable deadlines and procedures. The Court takes judicial notice of the docket, pleadings, and other filings in the Santa Clara Superior Court proceedings.

[3] The plaintiffs' second declaration of prejudice inaccurately stated that the motion hearing was set for January 24, 2023, rather than January 23, 2024.

that the only matter on calendar at that time was a February 22, 2024 hearing relating to an order to show cause regarding dismissal for failure to serve.

The court's refusal to recuse following the filing of plaintiffs' second declaration of prejudice appears to have been erroneous, as a hearing on the County's demurrer was already on the court's calendar at that time and there was no hearing scheduled for February 22, 2024. Plaintiffs, however, did not inform the superior court of its error and seek reconsideration on that basis. They also did not seek writ relief in the California Court of Appeal.

Plaintiffs' counsel encountered numerous difficulties while litigating in Santa Clara County Superior Court, including difficulties with the court's e-filing system that sometimes resulted in weeks-long delays in the filing of documents. In response to these problems, plaintiffs filed a claim with the Judicial Council of California. Again, however, they did not pursue relief in the California Court of Appeal.

On March 1, 2024, the state court sustained the County's demurrer without leave to amend on the ground that the County was immune from liability under Cal. Gov't Code § 816.6. On March 27, 2024, the County filed and served a Notice of Entry of Judgment. Plaintiffs did not file an appeal within the 60-day window thereafter for doing so.

2. *Federal Court Litigation*: On January 18, 2024, while the state court lawsuit was still pending in Santa Clara County Superior Court, plaintiffs filed this federal court action against the County of Santa Clara, its Department of Environmental Health, the City of Mountain View, its Planning and Developmental Department, Santa Clara County employee Lisa Flores, the Mountain View Police Department, the County of Santa Clara Superior Court, and Does 1–100. *See* Compl., Dkt. No. 2. On March 22, 2024, the plaintiffs voluntarily dismissed the County of Santa Clara Superior Court as a party. *See* Dkt. No. 33.

On April 3, 2024, plaintiffs filed the operative first amended complaint, adding as defendants Farhad Amirebrahimi, Tom Schmidt, Pablo Donato, the Mountain View Fire Department, and Matthew Gundersen. Dkt. No. 37. Plaintiffs' first amended complaint asserts ten causes of action. The first three causes of action are federal claims asserted against the City of Mountain View and the Mountain View police department. At issue in defendants' motions to

7

dismiss are the other seven claims: (4) an unconstitutional custom, policy, or procedure in violation of Section 1983 against the City of Mountain View and the County of Santa Clara; (5) a survival action under Section 1983 against the City of Mountain View and the County of Santa Clara; (6) an unlawful failure to prevent violations of law in violation of Section 1983 against all defendants; (7) a state created danger in violation of Section 1983 against the City of Mountain View and the County of Santa Clara; (8) negligence, negligence per se, and wrongful death under Cal. Gov't Code § 820 and California common law against the City of Mountain View and the County of Santa Clara; (9) "Negligent/Reckless Inflection [sic] of Emotional Distress" under California common law against the City of Mountain View; and (10) "Negligent/Reckless/ Inflection [sic] of Emotional Distress" under California common law against the City of Mountain View and the Mountain View Police.

On June 14, 2024, defendants Schmidt, Donato, the Mountain View Fire Department, and Gundersen filed an answer. The remaining defendants separately filed two motions to dismiss plaintiffs' claims against them pursuant to Rule 12(b)(6). The Court scheduled the motions for oral argument on August 1, 2024. After plaintiffs' counsel Eliyahu Y. Kaplunovsky failed to appear at the hearing and instead asked an attorney unfamiliar with the underlying issues to specially appear on his behalf, the Court ordered Mr. Kaplunovsky to show cause why the Court should reschedule the hearing to another date rather than decide the motions on the papers.

Mr. Kaplunovsky thereafter submitted a declaration stating that he had been traveling in Panama at the time of the hearing, that he "was under the very strong impression that the Court would provide a tentative ruling on the matter, with enough time [sic] assure an appearance was made," and that he "would then either contest the matter using counsel by Special appearance or I [sic] not contest the Court's ruling." Notably, however, the Court's Standing Order for Civil Cases specifically stated then (as now) that the Court does not issue tentative rulings on upcoming motions. Because Mr. Kaplunovsky failed to identify any good cause for his failure to appear at the originally scheduled hearing, the Court submitted the motions to dismiss and stated that it would resolve those motions without further argument.

On September 25, 2024, in advance of the initial case management conference in this

1  matter, the Court notified the parties that it was granting both motions to dismiss. This order
2  provides the Court's reasoning.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." If the complaint does not state a claim, the defendant may move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Dismissal is required if the plaintiff fails to allege facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Materials outside the complaint can be considered on a Rule 12(b)(6) motion if they are incorporated by reference therein or otherwise judicially noticeable. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A [district] court may [ ] consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."). The Court may consider documents which are "not physically attached to the complaint" "if the [ ] 'authenticity ... is not contested' and 'the plaintiff's complaint necessarily

relies' on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998)). Federal Rule of Evidence 201 permits judicial notice of "a fact that is not subject to reasonable dispute" because it is "generally known."

## ANALYSIS

### I. The requests for judicial notice are granted.

The City defendants request judicial notice of two court filings from the plaintiffs' state court action. The County Defendants also request judicial notice of various court filings and the docket from the plaintiffs' state court action, as well as of Section 3119B of the 2019 California Building Code and the Building Standards Commission's website regarding the California Building Standards. The County Defendants also ask the Court to take judicial notice of the original complaint filed in this action.

Each of the documents at issue is available from a source whose accuracy cannot reasonably questioned. Fed. R. Evid 201(b). The Court will therefore take judicial notice of the existence and content of the documents at issue without taking judicial notice of the underlying truth of any factual assertions therein.

### II. The eighth, ninth, and tenth causes of action against the City of Mountain View and the Mountain View Police Department are time barred.

The California Government Claims Act, Cal. Gov't Code §§ 810–996.6, sets forth procedural requirements that claimants must meet prior to filing a lawsuit against a government entity. First, a "claim relating to a cause of action for death or for injury to person … shall be presented" to a public entity "not later than six months after the accrual of the cause of action." Cal. Gov't Code § 911.2(a). If a public entity issues a notice of rejection within the 45-day statutory period for doing so, Cal Gov't Code § 913, the claimant then must file a lawsuit within six months from the date notice is personally delivered or deposited in the mail, Cal. Gov't Code § 945.6(a)(1).

The eighth, ninth, and tenth claims all assert causes of action for death or injury to a person against a government entity. The eighth cause of action alleges recklessness, negligence, and negligence per se in violation of Cal. Gov't Code § 820 and California common law. The ninth

10

cause of action alleges "Negligent/Reckless Inflection [sic] of Emotional Distress" under California Common Law. The tenth cause of action likewise alleges "Negligent/Reckless/Inflection [sic] of Emotional Distress" under California common law.

To the extent plaintiffs bring these causes of action against the City of Mountain View or the Mountain View Police, they are time-barred. The City timely rejected the plaintiffs' written claim on October 11, 2022. Plaintiffs had six months from that date to bring a lawsuit, but the plaintiffs waited until January 2024 to commence this action. Plaintiffs' claims are therefore untimely.

Plaintiffs contend that they are not required to comply with the California Claims Act because the eighth, ninth, and tenth causes of action are federal claims brought under 42 U.S.C. § 1983. That conclusion is plainly inconsistent with the allegations in the first amended complaint, which expressly reference state rather than federal law. Accordingly, these claims against the City and the Mountain View Police Department are time-barred and must be dismissed. Because plaintiffs cannot render those claims timely through amendment, the dismissal of these claims is without leave to amend and with prejudice.

**III.     Plaintiffs' claims against the County defendants are barred by collateral estoppel or claim preclusion.**

The plaintiffs assert the following five causes of action against the County Defendants: (4) an unconstitutional custom, policy, or procedure in violation of Section 1983; (5) a survival action under Section 1983; (6) an unlawful failure to prevent violations of law in violation of Section 1983; (7) a state created danger in violation of Section 1983; and (8) negligence, negligence per se, and wrongful death under Cal. Gov't Code § 820 and California common law. Because these claims are either federal claims not subject to California six-month deadline for filing state law claims against government entities or were properly filed within six months as part of plaintiffs' state court lawsuit, they are not time-barred. The claims, however, suffer from other fatal defects.

**A.     The eighth cause of action is barred by collateral estoppel.**

"Collateral estoppel, or issue preclusion, bars the relitigation of issues actually adjudicated in previous litigation between the same parties." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318,

11

1320 (9th Cir. 1992). A party invoking issue preclusion must establish: "(1) the issue at stake [is] identical to the one alleged in the prior litigation; (2) the issue [was] actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation [was] a critical and necessary part of the judgment in the earlier action." *Id.*

The eighth cause of action for negligence, negligence per se, and wrongful death is identical to the same cause of action alleged in the prior action. In that lawsuit, plaintiffs asserted causes of action against the County for negligence, negligence per se, and wrongful death involving the same underlying facts. The state court sustained the County's demurrer without leave to amend based on its determination that the County was immune from liability under Cal. Gov't Code. § 816.6. Judgment was entered in March 2024, and plaintiffs did not appeal.

The parties do not dispute that the issue presented by plaintiffs' eighth cause of action against the County was actually litigated and a necessary part of the judgment in the prior state court action. *See Clark*, 966 F.2d at 1320. The plaintiffs nonetheless argue that collateral estoppel does not bar them from litigating that claim in this action because they "encountered substantial interference, oppression and bias while attempting to litigat[e] their causes of action in state court" and were thus denied a full and fair opportunity to litigate their claims. Plaintiffs' argument is predicated on allegations that the civil clerk's office and superior court "conspired to interfere and did interfere" with the plaintiffs' ability to exercise their right by refusing to file pleadings or ignoring pleadings. *See* Dkt. No. 55, at 5–6. Indeed, plaintiffs filed a complaint with the Judicial Council of California relating to this alleged misconduct.

Plaintiffs' argument fails. The plaintiffs had an opportunity to litigate the issue, they did so, and the judgment it is now final because plaintiffs failed to file an appeal. To the extent they were prejudiced by any erroneous rulings in the state court action or by the conduct of the superior court clerk's office, their proper means for seeking relief was by filing an appeal with the California Court of Appeal and asking the state appellate court to reverse the judgment on that ground. Because plaintiffs failed to pursue that available method of recourse, they are now barred

from relitigating their eighth cause of action in these proceedings.[4] Plaintiffs' eighth cause of action against the County is therefore dismissed with prejudice.

### B. The remaining causes of action against the County Defendants are barred by claim preclusion.

Federal courts must give "full faith and credit" to judgments of state courts, 28 U.S.C. § 1738, which prevents them from "employ[ing] their own preclusion rules in determining the preclusive effect of state judgments." *Noel v. Hall*, 341 F.3d 1148, 1166 (9th Cir. 2003). Federal courts instead "accept the rules chosen by the State from which the judgment is taken." *Id.* The Court will therefore apply California law to determine the claim-preclusive effect of the state court litigation between the plaintiffs and the County.

Under California's claim preclusion doctrine, "all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date." *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 897 (2002). For claim prelusion to apply, three requirements must be met: "(1) the second lawsuit must involve the same 'cause of action' as the first one, (2) there must have been a final judgment on the merits in the first lawsuit and (3) the party to be precluded must itself have been a party, or in privity with a party, to that first lawsuit." *San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys.*, 568 F.3d 725, 734 (9th Cir. 2009).

All three conditions are met here.

As to the first requirement, this lawsuit and the state court action involve the same primary right. "Unlike the federal courts, which apply a transactional nucleus of facts test, California courts employ the 'primary rights' theory to determine what constitutes the same cause of action for claim preclusion purposes." *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) (cleaned up). Under the primary rights theory, a cause of action "arises out of an antecedent primary right

---

[4] Unlike federal court judgments that become final upon issuance, California state court judgments do not become final until the exhaustion of all direct appeals. *See Kay v. City of Rancho Palos Verdes*, 504 F.3d 803, 808 (9th Cir. 2007). Accordingly, had plaintiffs filed an appeal from the state court judgment, that judgment would not bar them from pursuing their eighth cause of action against the County in this action for so long as the appeal remained pending.

13

1    and corresponding duty and the delict or breach of such primary right and duty by the person on
2    whom the duty rests. 'Of these elements, the primary right and duty and the delict or wrong
3    combined constitute the cause of action in the legal sense of the term.'" *Boeken v. Philip Morris*
4    *USA, Inc.*, 48 Cal. 4th 788, 797–98 (2010) (quoting *McKee v. Dodd*, 152 Cal. 637, 641 (1908)). In
5    this context, "cause of action" is the "right to obtain redress for a harm suffered, regardless of the
6    specific remedy sought or the legal theory (common law or statutory) advanced." *Id.* at 798. The
7    "determinative factor is the harm suffered" and "[w]hen two actions involving the same parties
8    seek compensation for the same harm, they generally involve the same primary right." *Id.*

9    The harm suffered by plaintiffs giving rise to their claims against the County Defendants in
10   both actions is same: the tragic loss of their decedent Ayden. As the County Defendants correctly
11   note, plaintiffs' primary right is "the right not to be wrongfully deprived of the decedent's
12   companionship and affection" and "the corresponding duty was the duty not to wrongfully deprive
13   Plaintiffs of the decedent's companionship and affection." That plaintiffs are pursuing a new legal
14   theory under 42 U.S.C. § 1983 in this second action does not change the primary right at issue.
15   *Boeken*, 48 Cal. 4th at 798; *see Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 988–89 (9th
16   Cir. 2005) ("'Different theories supporting the same claim for relief must be brought in the initial
17   action.' [citation omitted] … Permitting these later-filed claims to proceed would create incentive
18   for plaintiffs to hold back claims and have a second adjudication.").

19   As to the second requirement, there was a final judgment on the merits in the state court
20   action. As noted already, that judgment became final when plaintiffs failed to file an appeal within
21   the timeframe for doing so.

22   As to the third requirement, the County Defendants were either party to or in privity with a
23   party to the prior action. Plaintiffs and the County itself were both parties to the prior action, and
24   while the newly added County employee defendants were not parties, their employer-employee
25   relationship with the County is sufficient to satisfy the privity requirements for matters within
26   their scope of employment. *See Drawsand v. F.F. Props., L.L.P.*, 866 F. Supp. 2d 1110, 1127
27   (N.D. Cal. 2011). Indeed, the first amended complaint specifically alleged that the individual
28   County defendants were working within the scope of their employment for the County. Those

14

individual County defendants are therefore in privity with the County.

Plaintiffs do not contend that the three requirements for claim preclusion are unsatisfied. Instead, they again argue that they were deprived of a "full and fair opportunity" to litigate their claims in state court and that the dismissal of their claims here would be contrary to the public interest. As noted already, however, plaintiffs' means of seeking relief from any errors that occurred in the state trial court proceedings was in the state Court of Appeal. And plaintiffs have identified no authority suggesting that this Court can disregard California's claim preclusion rules simply because they are pursuing claims under 42 U.S.C. § 1983. While plaintiffs contend that the public has an interest in having their claims resolved on the merits because they involve matters of code enforcement and threats to children posed by inadequate enforcement, plaintiffs are seeking only retrospective damages on their own behalf, not forward-looking relief on behalf of the public as a whole. Under these circumstances, they cannot invoke the public interest exception to avoid claim preclusion.

Because claim preclusion bars plaintiffs' fifth, sixth, and seventh causes of action against the County Defendants, those causes of action are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, plaintiffs' fourth, fifth, sixth, and seventh causes of action against the County Defendants and plaintiffs' eighth, ninth, and tenth causes of action in their entirety are dismissed with prejudice. The County of Santa Clara and county employee defendants Flores and Amirebrahimi are dismissed as parties to this action because no further claims are alleged against them.

**IT IS SO ORDERED.**

Dated: February 18, 2025

P. Casey Pitts
United States District Judge