UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA JANETH GONZALEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF MOUNTAIN VIEW, et al., <br><br> Defendants. | Case No. 24-cv-00296-PCP <br><br> **ORDER GRANTING MOTION TO DISMISS THE THIRD AMENDED COMPLAINT** <br><br> Re: Dkt. No. 91 |

The City of Mountain View and city building inspector Tom Schmidt move to dismiss plaintiffs' third amended complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons discussed herein, their motion is granted.

## BACKGROUND

Plaintiffs Laura Janeth Gonzalez and Pedro Rivera bring this civil rights action individually and as successors in interest of their decedent son Ayden Noe Rivera. Their minor son Ethan Noe Rivera is also a plaintiff. This action arises out of Ayden's tragic and untimely death at age nine, when he drowned in the swimming pool of a Mountain View apartment complex on July 6, 2022.

**I.  Factual Background**

Plaintiffs are the parents of Ayden Rivera, a nine-year old child with developmental disabilities who tragically drowned at an apartment complex in Mountain View in 2022.[1] Ethan is Ayden's younger brother who, at six-years old, witnessed Ayden's death. Ms. Gonzalez and Ethan were residents of Santa Clara County.

---

[1] For the purposes of defendants' Rule 12(b)(6) motions, the Court accepts as true the allegations in the third amended complaint.

On July 6, 2022, Ayden and Ethan clambered over a low-lying fence and ventured into a swimming pool at an apartment complex located at 1895 Ednamary Way in Mountain View, California. Ayden "stepped onto a small, 3-inch-high brick planter located immediately next to a small, roughly 3-foot, 11-inch–high chain-link fence that separated the pool from the surrounding walkways." According to plaintiffs, the design of the chain-link fence and placement of the slide facilitated Ayden's entry into the pool. Ayden lost his balance while reaching for a device and fell into the deep end of the pool. Ethan tried to help his older brother by reaching for a floating safety ring which was inaccessible.

Ethan ultimately sought assistance from nearby painters, who pulled Ayden's body out of the pool, began administering CPR, and called 911. Officers from the Mountain View Police Department arrived on the scene and continued CPR until the ambulance arrived. Ayden was pronounced dead at 5:00 PM the day of his drowning.

The plaintiffs allege that the City of Mountain View failed to undertake due diligence to ascertain the safety of swimming pools under its jurisdiction, including the pool where Ayden drowned. Defendant Tom Schmidt was the "City's Building Inspector with the authority to set policies responsible for inspecting or overseeing inspections."

The plaintiffs allege that, "[i]n order to abide by California Health & Safety Code, California Building Standards Code and California State Housing Law," a City ordinance created the multi-family housing inspection program. That program provided for inspections of multi-unit apartments every five years while permitting certain complexes without serious violations to be inspected every eight years and to "self-certify" every two years during the interim period. According to plaintiffs, "[a]lthough City's Ordinance provided that it 'is the intent of the City to inspect multi-family housing every five years, then every eight years,' what actually happened was that City did not inspect multi-family housing on a regular basis; instead, its Program delegated City's police powers of inspection and enforcement as to California's laws for health and safety, housing and building standards of multi-family dwellings, to the property owners of multi-family dwelling properties … grant[ing] the financially-interested owners complete authority to carry out an important health and safety public function by conducting their own health and safety, state

housing and California Building Standard inspections on their own property." Plaintiffs allege that "[o]ver a period of at least twenty years of having the power to police themselves, the [1895 Ednamary Way] property owners allowed the pool and pool area where Ayden drowned to become completely dilapidated, as shown by the reports by both City and County inspectors of multiple serious pool safety violations, including violations related to the pool enclosure that allowed and continued to allow children unsupervised access such pool."

According to plaintiffs, the 3-foot, 11-inch chain-link fence that enclosed the swimming pool at 1895 Ednamary Way was non-compliant with state law. The Mountain View Fire Department and Schmidt had inspected the swimming pool gate and fence at least seven times since 2002. Plaintiffs allege that "despite numerous citations and obvious warnings by City and County, the subject property owners failed and refused to make any of the required repairs and upgrades to the pool area and pool enclosure." In September 2013 and December 2013, the Fire Department and the City's Department of Environmental Health reported that the pool's gate and fence were out of compliance and required a permit. Also in September 2013, Inspector Schmidt inspected the subject property and reported that pool enclosure was out of compliance with California state law and that there were other health and safety issues with the subject property. In February 2014, Schmidt sent a Certificate of Code Compliance to the property informing it that it had achieved substantial compliance without mentioning the pool enclosure, thereby exempting the property from inspection for eight years and allowing the property to self-certify every two years during the interim. Except for the installation of a new pool pump and "other cosmetic repairs," the plaintiffs allege that "[n]o changes, additions, or modifications large or small [were] made to the subject pool fence or pool area in general were made" between February 2014 and the date of Ayden's death. They assert that "[a]t some time between the years 2016 and 2017, [the] City was notified of [a] change of [1895 Ednamary Way] ownership …. but did not perform the inspection of the subject property triggered by the change in ownership."

Beginning in 2013, the City created a form entitled the "Multi-Unit Property Inspection Checklist" ("the Checklist"), which listed property conditions to be checked for certain health and safety conditions. Plaintiffs contend that "[t]he Checklist's provisions conflicted with the

3

1  California Building Code, Housing Law, California Building Standards and regulations as
2  amended by the California State legislature in 2012 and thereafter, which did not categorize code
3  violations as 'serious' or 'not serious,' but as misdemeanors or infractions, all of which needed to
4  be cited and remedied." Plaintiffs allege that the Checklist improperly suggested that pool
5  enclosure fences that were less than 5 feet in height were to be considered non-serious violations.
6  To self-certify, the 1895 Ednamary Way owners purportedly "were required by City to use the
7  deficient Checklist as the basis to conduct their own health and safety, state housing law and
8  California building standard inspections, using only lay person knowledge, if any, about the
9  subjects involved in a proper inspection."

Plaintiffs allege that "all other California cities and counties performed their state-mandated duties to enforce California's health and safety, state housing and California building standard inspections as mandated, e.g., with governmental inspectors properly certified and licensed who did not grant exemptions to non-compliant multi-family complex owners or delay requiring that such owners promptly remedy dangerous conditions of property." Plaintiffs further allege that "children and families living in apartment complexes in other California cities and counties enjoyed the regular and equal administration of California's public health and safety laws and the equal administration of the health and safety, state housing and California building standards that were legislated for their safety and well-being."

## II.  Procedural Background

1. *State Court Litigation*: On September 2, 2022, the plaintiffs filed a claim with the City of Mountain View consistent with the California Government Claims Act. The City rejected the claim on October 11, 2022, which was within the 45-day statutory window for doing so.

On June 12, 2023, plaintiffs commenced an action in Santa Clara County Superior Court against the County of Santa Clara, its Department of Environmental Health, and its Department of Planning and Development, asserting causes of action for negligence, negligence per se, and wrongful death. On December 8, 2023, the County filed a demurrer to the state court plaintiffs' complaint and the demurrer was set for hearing before the assigned judge on January 23, 2024. On March 1, 2024, the state court sustained the County's demurrer without leave to amend on the

4

ground that the County was immune from liability under Cal. Gov't Code § 816.6. On March 27, 2024, the County filed and served a Notice of Entry of Judgment. Plaintiffs did not file an appeal within the 60-day window thereafter for doing so.

2. *Federal Court Litigation*: On January 18, 2024, while the state court lawsuit was still pending in Santa Clara County Superior Court, plaintiffs filed this federal court action against the County of Santa Clara, its Department of Environmental Health, the City of Mountain View, its Planning and Developmental Department, Santa Clara County employee Lisa Flores, the Mountain View Police Department, the County of Santa Clara Superior Court, and Does 1–100. On March 22, 2024, the plaintiffs voluntarily dismissed the County of Santa Clara Superior Court as a party.

On April 3, 2024, plaintiffs filed a first amended complaint, adding as defendants Farhad Amirebrahimi, Tom Schmidt, Pablo Donato, the Mountain View Fire Department, and Matthew Gundersen. On June 14, 2024, defendants Schmidt, Donato, the Mountain View Fire Department, and Gundersen filed an answer. The City of Mountain View and the Mountain View Police Department filed a partial motion to dismiss the following claims against them: negligence, negligence per se, and wrongful death under Cal. Gov't Code § 820 and California common law; "Negligent/Reckless Inflection [sic] of Emotional Distress" under California common law; and "Negligent/Reckless/ Inflection [sic] of Emotional Distress" under California common law. The Court granted their motion to dismiss with prejudice, finding that the claims at issue were time-barred. Separately, the County of Santa Clara and county employee defendants Flores and Amirebrahimi moved to dismiss all claims against them. The Court granted the County defendants' motion to dismiss with prejudice, finding that the claims were precluded by the final state court judgment. The County defendants were dismissed as parties to this action because no claims remained against them.

In December 2024, plaintiffs filed a second amended complaint. That complaint contained the following claims: (1) a § 1983 First Amendment retaliation claim against the City of Mountain View and the Mountain View Police Department; (2) a § 1985 conspiracy claim against the City of Mountain View and Mountain View Police Department; (3) a § 1986 "Neglect to Prevent

Violation Of Civil Rights Laws" claim against the City of Mountain View and the Mountain View Police Department; (4) a § 1983 "Unconstitutional Custom, Policy or Procedure" claim against the "County of Santa Clara [sic] and [the] City of Mountain View"; (5) a § 1983 "Survival Action" against the City of Mountain View; (6) a § 1983 "Policy That Fails to Prevent Violations of Law" claim against the City of Mountain View; (7) a § 1983 state-created danger claim against the City of Mountain View; (8) a § 1983 malicious prosecution claim against the City of Mountain View and the Mountain View Police Department; (9) a § 1983 "*Monell*" claim against the City of Mountain View; (10) a California common law defamation claim against the City of Mountain View and the Mountain View Police Department; and (11) a § 1983 retaliation in violation of civil rights claim against the City of Mountain View and the Mountain View Police. Defendants moved to dismiss the second amended complaint, and the Court granted the motion dismissing all claims with leave to amend.

In June 2025, plaintiffs filed a third amended complaint this time naming only defendants City of Mountain View and Tom Schmidt. This operative complaint alleges claims for (1) denial of Equal Protection pursuant to the California Constitution and 42 U.S.C. § 1983 against all defendants; (2) "unconstitutional custom, policy, or procedure" pursuant to 42 U.S.C. § 1983 against all defendants; (3) "state created danger" pursuant to 42 U.S.C. § 1983 against the City; (4) "policy that fails to prevent violations of law" pursuant to 42 U.S.C. § 1983 against the City; and (5) "survival action" pursuant to 42 U.S.C. § 1983 against the City.

The defendants now move to dismiss all claims against them.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." If the complaint does not state a claim, the defendant may move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Dismissal is required if the plaintiff fails to allege facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

6

1   *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule
2   12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible
3   on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

4       In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the
5   complaint as true and construe the pleadings in the light most favorable" to the non-moving party.
6   *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal
7   conclusions "can provide the [complaint's] framework," the Court will not assume they are correct
8   unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept
9   as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable
10  inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell*
11  *v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

12      Materials outside the complaint can be considered on a Rule 12(b)(6) motion if they are
13  incorporated by reference therein or otherwise judicially noticeable. *See United States v. Ritchie*,
14  342 F.3d 903, 908 (9th Cir. 2003) ("A [district] court may [ ] consider certain materials—
15  documents attached to the complaint, documents incorporated by reference in the complaint, or
16  matters of judicial notice—without converting the motion to dismiss into a motion for summary
17  judgment."). The Court may consider documents that are "not physically attached to the
18  complaint" "if the [ ] 'authenticity ... is not contested' and 'the plaintiff's complaint necessarily
19  relies' on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Parrino v.*
20  *FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998)). Federal Rule of Evidence 201 permits judicial
21  notice of "a fact that is not subject to reasonable dispute" because it is "generally known."

**ANALYSIS**

**I.     The requests for judicial notice are granted.**

Plaintiffs request judicial notice of three documents currently available on the City's website.

The Court grants these requests for judicial notice because each of the documents are either public documents, incorporated by reference into plaintiffs' complaint, or available from a source whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b). While the Court takes

7

1  judicial notice of the existence and content of the documents at issue, it will not take judicial

2  notice of the underlying truth of any factual assertions therein.

**II.     Plaintiffs' first and second claims are dismissed without leave to amend.**

Plaintiffs' first and second claims are premised on defendants' purported violation of their rights under the equal protection provisions of the United States and California Constitutions.[2] Plaintiffs' theory is that

> the City's adoption of the multi-family housing inspect program [and the misleading self-inspection checklist], and its *de facto* policy or custom of issuing building inspection compliance certificates to multi-family property owners whose properties were not in complete compliance with State and local building codes, approving them as 'substantially' compliant instead of fully remediated, violated the right of all City residents and visitors, as well as Plaintiffs' right, to the equal protection of California's health and safety laws.

The Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1; Cal. Const. art. I, § 7 ("A person may not be ... denied equal protection of the laws."). "'The equal protection analysis under the California Constitution is 'substantially similar' to analysis under the federal Equal Protection Clause.'" *Olson v. California*, 104 F.4th 66, 76 (9th Cir. 2024) (quoting *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004)). Accordingly, the Court will address the state and federal equal protection claims together.

"To establish an Equal Protection claim, [p]laintiffs must demonstrate that a class that is similarly situated has been treated disparately." *Id.* at 77 (quotations omitted). "The comparator groups need not be similar in all respects, but they must be similar in those respects relevant to the defendants' policy." *Id.* (cleaned up). "Once Plaintiffs identify a similarly situated class that is treated disparately under [the policy], they must also negate 'every conceivable basis which might support' such disparate treatment." *Id.*

To the extent that plaintiffs' equal protection claims are based on defendants' inadequate enforcement of California health and safety laws as compared to other California cities'

---

[2] Defendants argue that plaintiffs improperly added this equal protection theory in their third amended complaint. The Court exercises its discretion to address this theory on the merits.

8

enforcement of those same laws, that theory fails because no disparate treatment *by the defendants* is alleged. Instead, the challenged practice involves a city-wide policy allegedly applied to all residents. Because the defendants are not alleged to have treated any city residents "disparately" under plaintiffs' theory, the theory does not support any equal protection claim.

Defendants suggest that plaintiffs' claim may be based on the disparate treatment of multi-family and single-family homes under the policy. This theory also fails to state an equal protection claim. The distinction between single-family and multi-family homes set forth in the policy does not involve a suspect classification or impinge on a fundamental right. As a result, rational basis review applies, and the policy will satisfy equal protection unless the plaintiffs can negate every conceivable basis for distinguishing between multi-family and single-family homes. *Olson*, 104 F.4th at 76. Plaintiffs do not even attempt to satisfy this burden, perhaps because there are numerous conceivable reasons why a city's inspection practices might differ as between single-family and multi-family homes.

Finally, for the sake of completeness, the Court notes that plaintiffs also could not pursue an equal protection claim premised on any theory that the City's inspection policy inevitably results in a denial of the fundamental rights of those individuals who ultimately suffer harm as a result of any inadequate inspections of multi-family homes under the policy. Such a theory would not involve "an identifiable class sufficient to maintain an equal protection claim." *Vergara v. California*, 246 Cal. App. 4th 619, 648 (2016).

Because plaintiffs' first and second claims fail to state any violation of their equal protection rights, both claims are dismissed. Because plaintiffs have had numerous opportunities to state a claim, have again failed to do so, and have not identified any additional allegations they might add to the complaint to avoid dismissal in the future, dismissal is with prejudice and without leave to amend.

**III.     Plaintiffs' third, fourth, and fifth claims are dismissed without leave to amend.**

The Court previously dismissed plaintiffs' third, fourth, and fifth claims. Their amended complaint fails to cure the problems with those claims identified in this Court's prior order.

### 1. Plaintiffs fail to state a § 1983 "state created danger" claim.

Plaintiffs' third claim is a state-created danger claim arising under the Due Process Clause of the Fourteenth Amendment. In their third amended complaint, plaintiffs have modified their claim to focus on the City's alleged delegation of its inspection powers to self-interested property owners and Schmidt's February 2014 issuance of the Certificate of Code Compliance "while being fully aware of the dangerous condition that the pool area and pool enclosure posed to young children within the local vicinity."

As explained in this Court's prior order, "[t]he Due Process Clause is a limitation on state action and is not a 'guarantee of certain minimal levels of safety and security.'" *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019). "Simply failing to prevent acts of a private party is insufficient to establish liability." *Id.* (citing *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011)). "The general rule is that a state is not liable for its omissions and the Due Process Clause does not impose a duty on the state to protect individuals from third parties." *Id.* (cleaned up).

> There are two exceptions to this general rule. First, a special relationship between the plaintiff and the state may give rise to a constitutional duty to protect. Second, the state may be constitutionally required to protect a plaintiff that it "affirmatively places ... in danger by acting with 'deliberate indifference' to a 'known or obvious danger.'

*Id.* (citations omitted); *see also Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1063 (9th Cir. 2006) (holding that the officer "affirmatively created a danger to [the plaintiff] she otherwise would not have faced" by informing her assailant of the accusations her family had made against him before they "had the opportunity to protect themselves from his violent response to the news ... [thus] creat[ing] 'an opportunity for [him] to assault [the plaintiff] that otherwise would not have existed'" (alterations omitted) (quoting *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992))).

Accordingly, to succeed on their claim that the City affirmatively exposed Ayden to a greater risk of a known danger, plaintiffs must establish three elements: (1) that the City's affirmative actions created or exposed them to an actual, particularized danger that they would not otherwise have faced; (2) that the injury they suffered was foreseeable; and (3) that the City was deliberately indifferent to the known danger. *Martinez*, 943 F.3d at 1271. Here, plaintiffs allege

that Ayden was affirmatively placed in danger by City officials' acts of, *inter alia*,

> exempting the subject property from a Multi-Family Housing inspection program inspection, for at least eight more years … while being fully aware of the dangerous condition that the pool area and pool enclosure posed to young children within the local vicinity, … abandoning [their] mandated duty under state law to inspect and enforce the State's Housing, Building Standard and Health & Safety Laws, … allowing the known hazard of an accessible pool with a easily climbable low chain link fence, the enforcement of its policies and procedures that were in contravention of California public health and safety laws over a period of two decades, … [and] being deliberately indifferent to a well-known danger to the health and safety of children in the local vicinity that could result in catastrophic injury to life or liberty of a young child by drowning.

Even if some of this conduct might involve the kind of "affirmative action" that could potentially support a state-created danger claim, plaintiffs' allegations are insufficient to plead such a claim here because Ayden would have faced the same danger of the unsafe apartment pool absent the City and Schmidt's actions. Plaintiffs do not contend that any of the actions identified above affirmatively prevented the property owner or others from addressing that danger. At its core, then, plaintiffs' complaint is that the defendants failed to remedy a problem. As noted already, however, the Due Process Clause imposes no such obligation on government officials. *Martinez*, 943 F.3d at 1271; *see also id.* at 1272 (holding that a police officer's failure to inform domestic violence victim of her rights or options and failure to arrest the alleged perpetrator did not warrant application of the state-created danger exception); *Owen v. City of Hemet*, No. ED CV 19-1388-JWH(E), 2020 WL 7978503, at *9 (C.D. Cal. Dec. 15, 2020), *report and recommendation adopted*, No. ED CV 19-1388-JWH(E), 2021 WL 606820 (C.D. Cal. Feb. 16, 2021), *aff'd*, No. 21-55240, 2022 WL 16945887 (9th Cir. Nov. 15, 2022) ("Plaintiff does not allege facts showing that Defendants took any affirmative act that created any danger to Plaintiff above and beyond the danger Plaintiff allegedly experienced due to the purported wrongdoing of the private parties who owned or managed the [ ] property."); *Hill v. San Francisco Housing Authority*, 207 F.Supp.2d 1021, 1031 (N.D. Cal. 2002) (finding insufficient plaintiffs' allegations that defendant "failed to take steps which would have reduced the risk that plaintiffs would be injured in a fire caused by third persons").

Because plaintiffs again have not stated a valid state-created danger claim, plaintiffs' third claim is dismissed with prejudice and without leave to amend.

### 2. Plaintiffs fail to state a § 1983 "policy that fails to prevent violations of laws" claim or a § 1983 "survival action" claim.

As explained in the Court's prior order, the problem with plaintiffs' fourth and fifth claims is their failure to explain how any of the challenged polices resulted in *constitutional* harm. Plaintiffs have identified no authority recognizing such a constitutional injury, and do not explain how the challenged policies otherwise violated any of Ayden's procedural or substantive due process rights.[3]

Additionally, to proceed on a claim premised on a failure to protect constitutional rights, a plaintiff must show not merely that the policy at issue was inadequate but that the policy "'amount[ed] to deliberate indifference' to the plaintiff's constitutional right[,] and that the policy caused the violation, in the sense that the [municipality] could have prevented the violation with an appropriate policy." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (cleaned up). Plaintiffs have not made pleaded such deliberate indifference to plaintiffs' constitutional right in their third amended complaint.

Because plaintiffs have not identified a cognizable constitutional harm or a policy that amounted to deliberate indifference to the plaintiffs' constitutional rights, the Court dismisses the fourth and fifth claims with prejudice and without leave to amend.

## CONCLUSION

For the reasons discussed herein, plaintiffs' third amended complaint fails to state a claim upon which relief can be granted. Accordingly, defendants' motion to dismiss is granted. Plaintiffs' claims are dismissed with prejudice and without leave to amend.

---

[3] To the extent plaintiffs attempt to rely on their state-created danger or equal protection theories, those theories fail for the reasons addressed above.

12

**IT IS SO ORDERED.**

Dated: August 27, 2025

_____
P. Casey Pitts
United States District Judge

13